TIFFANY A. PACHECO,

        Plaintiff,

-vs-                                Case No. 6:09-cv-855-Orl-31GJK

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

Plaintiff Joy Tiffany A. Pacheco (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. *See* Doc. No. 1. The Claimant maintains she became disabled on September 1, 2000, due to her ulcerative colitis and deep vein thrombosis. R. 51. At the administrative level, the Commissioner denied the Claimant's applications, finding that she is not disabled. R. 4-19. For the reasons set forth below, it is recommended that the Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g)**.

## I.    MEDICAL HISTORY

On November 18, 1998, the Claimant presented to Orlando Regional Healthcare System ("Orlando Regional") complaining of rectal bleeding and a weight loss of 15 to 20 pounds over the course of two (2) months. R. 147-49. The Claimant was fourteen (14) years old. *Id.* On

November 20, 1998, the Claimant's progress notes indicate that a colonoscopy revealed severe pancolitis, likely ulcerative colitis. R. 158.

On May 27, 1999, Ram Amilineni, M.D., noted that the Claimant was hospitalized for ten days, diagnosed with ulcerated colitis, and prescribed Prednisone, Flagyl, Zantac, Flexeril and Purimethol. R. 207. She was having episodes of diarrhea. *Id.*

On June 15, 1999, the Claimant was treated at Orlando Regional for complaints of upper extremity pain and swelling. R. 166. She was diagnosed with "extensive" deep vein thrombosis in her left upper extremity. *Id.* Over the next several days, the Claimant underwent intravenous infusions which, as of June 19, 1999, began to show improvement in the amount of the clot in the left axillary and subclavian veins. R. 170. Joe F. Franklin, M.D., noted a successful thrombolysis and angioplasty of the left subclavian vein with a small amount of residual clot. R. 172. On July 22, 1999, Dr. Amilineni increased the Claimant's Coumadin, noted that the Prednisone was causing weight gain and prescribed physical activity. R. 203.

On April 30, 2000, the Claimant began treating at the Pediatric Gastroenterology Clinic with Joel M. Andres, M.D. R. 218-32. On May 31, 2000, Dr. Andres noted that the Claimant has a diagnosis of severe ulcerative colitis and was in remission. R. 229. He referred the Claimant to the Cleveland Clinic because she was interested in surgery. *Id.* On July 5, 2000, the Claimant underwent a total colectomy and restorative proctectomy with ileoanal anastomosis and a diverting loop ileostomy. R. 223, 227. On September 13, 2000, she underwent take down and closure of the loop ileostomy. R. 223.

On November 22, 2000, the Claimant was having abdominal discomfort. *Id.* She reported frequent stooling of about 10 to 12 times per day. R. 227. On December 17, 2000, the

Claimant complained of have 12 to 15 stools per day with occasional blood. R. 225. She was taking 2 to 3 tablets of Imodium each day. *Id.* Dr. Andres noted that two weeks prior to her visit, the Claimant had severe abdominal cramps and vomiting and was evaluated at the local emergency room. R. 233. X-rays revealed a partial small bowel obstruction and she was transferred to the Cleveland Clinic where she remained for two days. *Id.*

On September 14, 2001, the Claimant returned to Dr. Andres complaining of up to 40 small stools per day. R. 221. She reported taking up to 5 Ibuprofen pills at one time for the pain. *Id.* She continued to see Dr. Andres through October of 2002. R. 216-21.

On October 29, 2003, Claimant was admitted to Orlando Regional. R. 235-37. The Claimant had lost more than 15 pounds over the past month. R. 236. She was treated with intravenous fluids and morphine for pain. *Id.* She underwent a flexible sigmoidoscopy which revealed pouchitis. *Id.* By discharge, she had a baseline stool numbers of seven (7) per day and her pain had improved. *Id.*

On July 2, 2006, Claimant was admitted to Central Florida Regional due to a flare-up of her ulcerative colitis with complaints of abdominal pain, cramps and diarrhea. R. 280. She complained of multiple loose stools all day and had not been able to keep much food down. *Id.* She began experiencing pain and swelling in her upper extremities and had to be treated for her deep venous thrombosis. R. 283. On July 9, 2006, the Claimant was transferred to Florida Hospital Fish Memorial for a thrombectomy in her right arm. R. 286. The Claimant's abdominal pain was much better. R. 287.

On July 12, 2006, the Claimant returned to Central Florida Regional for several days. R. 249. On July 16, 2006, Felix A. Navarro, M.D., performed a consultative examination of the Claimant. R. 253-57. Dr. Navarro stated the following:

> [Claimant] with long-standing ulcerative colitis since age 14, had had very severe courses of her ulcerative colitis which has not responded to medical therapy and which led to a subtotal colectomy with an ileoana pouch which consists of a double loop of ileum that is fashioned into a pouch and stapled to the rectum stump and stripped of its mucosa, thereby preserving the anal sphincter.
>
> . . .
>
> This patient has had all the psychological issues related to severe ulcerative colitis at a young age with depression, anxiety, multiple hospital admissions. Also, because pouchitis can cause a lot of diarrhea and urge to go to the bathroom and flare-ups, she cannot maintain a job. Usually that is because of the nature of this disease, they have to go to the bathroom numerous times a day which most jobs are not sensitive to. They also need frequent days off when they have flare-ups and it is very difficult for these patients to maintain a job. Also, when she reached age 18, she lost her Medicaid insurance and now she is not insured and some of these drugs for maintenance at the local level for pouchitis are also costly and apparently she has no access to medical care due to the fact that she does not have insurance and she only has access when there is an acute emergency, and she has to be admitted to the hospital, and even when she is admitted to the hospital she is not welcome to most of these hospitals for care without insurance.
>
> . . .
>
> This patient will need some sort of disability in order to have access to medical care. She does not have money, she cannot keep a job, her parents do not have the money either to pay for expensive hospital bills and this patient has disease of the magnitude that will require disability at the present time. Once we get her ulcerative colitis under control, then she may be able to maintain a job, but right now she will need disability. Also we have the other issue of the hypercoagulable state that is being worked up with multiple clot formation.

R. 255-56. Claimant was discharged on July 20, 2006. R. 249-51. Hasib Ibne-Rasa, M.D., noted that the Claimant's condition was stable. R. 251.

On August 3, 2006, the Claimant was treated at Florida Hospital Fish Memorial for bilateral upper extremities swelling and newly developed thrombus. R. 304-06. She was admitted to be anticoagulated with direct thrombin inhibitors. R. 305-06. Due to her poor intravenous access, she was started on Arixtra. *Id.*

The Claimant began treating with Mohamad H. Masri, M.D. R. 372-73.[1] Dr. Masri stated that the Claimant had no acute complaints and her upper extremity swelling had almost resolved completely, but it was still mildly edematous. *Id.*

On September 8, 2006, Donald Morford, M.D., completed a residual functional capacity ("RFC") assessment based solely on a review of the Claimant's medical record. R. 322-29. Dr. Morford opined that the Claimant could occasionally lift 20 pounds, 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday and push and/or pull without limits. R. 323. She could occasionally climb a ramp or stairs, balance, stoop, kneel, crouch, or crawl, and never climb a ladder, rope or scaffold. R. 324. Dr. Morford opined that she was limited in reaching in all directions, including overhead. R. 325. He also stated that she should avoid concentrated exposure to hazards, such as machinery or heights. R. 326. Dr. Morford indicated that the Claimant's symptoms are consisted with the projected RFC. R. 327.

On October 13, 2006, the Claimant presented to the Florida Hospital emergency department complaining of abdominal pain and diarrhea. R. 378-79. She was given a prescription for Lortab, Imodium AD and Bentyl. R. 379. On October 19, 2006, Dr. Masri submitted a letter at the Claimant's request, which stated:

> [Claimant] is a 22-year-old female under my care. The [Claimant] has a significant hypercoagulable state with multiple recurring deep vein

---

[1] On August 31, 2006, she saw Dr. Masri for a follow-up visit, but there are no prior records from Dr. Masri. R. 372.

thrombosis requiring hospitalization and lifetime anticoagulation. On top of that, the [Claimant] has ulcerative colitis, for which she has not yet been properly treated because of lack of insurance and financial support. The [Claimant] has been hospitalized numerous times and is functionally and practically disabled from her illness. She has needed to go back on intervenous [sic] anticoagulation repeatedly for recurrent deep vein thrombosis. The patient does need all the help and assistance she can get at every level.

I hereby ask you to provide [Claimant] with all the assistance you can give her in obtaining full disability benefits, as well as social security benefits, to the extent of the law . . .

R. 380. The Claimant continued to see Dr. Masri over the next few months. R. 390-95.

On November 8, 2006, Claimant was evaluated by Bharat Patel, M.D. R. 381-83. The Claimant stated that she was having significant diarrhea, frequent bowel movements up to 15 to 20 per day, and she occasionally noticed blood in small amounts. R. 381. Dr. Patel noted the Claimant's blood disorder. *Id.* Dr. Patel stated the following:

This is a 22-year-old unfortunate female with history of ulcerative colitis for which she has had total colectomy done who presents for review of a need for maintenance therapy as regards to ulcerative colitis. At present, she has ileorectal anastomosis, as she did have a total colectomy done. Thereafter, she had episodes of pouchitis. I would suggest we start her on Asacol 400 mg 2 tablets 3 times a day. She has taken Rowasa enemas in the past without any relief. I will see her again in 4 weeks. She may very well need a protoscopy or sigmoidoscopy examination to evaluate the rectal mucosa, as regards to ulcerative colitis versus other pathology. If she does not respond to the Asacol therapy, we may need to certainly schedule her for a flexible sigmoidscopy or re-evaluation.

She certainly has multiple medical problems and these are complex as well, including GI, as well as hematologic problems. . .

R. 382. On December 8, 2006, Dr. Patel noted that since the Claimant started taking Asacol, she was feeling better, her diarrhea improved significantly and she denied any rectal bleeding. R. 383.

Dr. Masri referred the Claimant to Shands Hematology Clinic for a consultation regarding her thrombosis. R. 384. Bradley S. Fletcher, M.D., stated that the Claimant would need lifelong anticoagulation "[g]iven the recurrent clots . . . and the likelihood that she will develop more clots". R. 386. On February 8, 2007, the Claimant returned to Dr. Masri for a follow-up appointment. R. 390-91. She had no acute complaints, noted minimal swelling in her right upper extremity and was feeling well. R. 390. Dr. Masri started the Claimant on Coumadin and she was to return in one month. R. 391.

On March 8, 2007, Dr. Masri noted that upon follow-up visit, the Claimant had no acute complaints, she was feeling very well and denied any swelling, chest pain or shortness of breath, and her GI (gastrointestinal) was doing very well with no diarrhea, no abdominal pain, no nausea and no vomiting. R. 441. On March 28, 2007, Dr. Masri stated that the Claimant had missed her prior appointment and had intentionally been noncompliant with taking her Arixtra because she did not want to see the bruising on her stomach. R. 440. He indicated that her GI disease and inflammatory bowel disease was controlled. *Id.* On April 4, 2007, Dr. Masri noted that the Claimant had no acute complaints and she had been properly taking her Arixtra with no GI or inflammatory bowel complaints. R. 439.

On April 27, 2007, Janet Attlesey, M.D., completed an RFC assessment based on the Claimant's medical record. R. 406-13. Dr. Attlesey opined that the Claimant could occasionally lift 20 pounds, 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday and push and/or pull without limits. R. 407. She could occasionally climb a ramp or stairs, balance, stoop, kneel, crouch, or crawl, and never climb a ladder, rope or scaffold. R. 408. Dr. Attlesey opined that she should avoid concentrated exposure to hazards,

such as machinery or heights. R. 410. Dr. Attlesey indicated that the Claimant seemed credible. R. 411.

On April 27, 2007, the Claimant returned to Dr. Masri. R. 437-38. The Claimant had no acute complaints. R. 437. However, she had been seen at Fish Hospital due to abdominal pain, but the pain was due to a ruptured ovarian cyst, not her GI or inflammatory bowel disease. R. 437. On July 6, 2007, Dr. Masri noted no acute complaints, but that the Claimant had failed to follow-up with her gynecologist and that the hospital gastroenterologist had taken her off of Asacol, despite Dr. Patel's prescription. R. 435. On September 28, 2007, Dr. Masri noted that the Claimant failed to follow-up with him since July 6, 2007. R. 433. The Claimant stated that her doctor at Fish Hospital no longer accepts Medicaid and she lost her insurance, so she did not make follow-up appointments with her doctor. *Id.* The Claimant had no acute complaints and was continuing to take Arixtra. *Id.*

On November 7, 2007, Dr. Masri discussed with the Claimant her lack of compliance with medical recommendations. R. 431. He was particularly concerned about getting her Arixtra on time because she had not properly completed the required forms, and he informed her that if the forms are not completed in time, she may suffer severe complications which are potentially life-threatening. R. 431-32. Dr. Masri recommended getting Claimant off of Arixtra. *Id.* On November 13, 2007, the Claimant returned to Dr. Masri with Coumadin toxicity. R. 430. She had not yet filled her Arixtra prescription. *Id.* On February 6, 2008, Dr. Masri indicated that the Claimant was feeling very well except for lower pelvic pain, which her gynecologist recommended surgery to remove an ovarian cyst. R. 429. The Claimant had been compliant with

her treatment. *Id.*  On May 7, 2008, the Claimant returned to Dr. Masri with no acute complaints. R. 428.

## II.    ADMINISTRATIVE PROCEEDINGS

On July 1, 2006, the Claimant filed an application for disability insurance benefits and supplemental security income, alleging disability as of September 1, 2000. R. 51-71.   On September 23, 2009, Administrative Law Judge Gerald F. Murray (the "ALJ") held an administrative hearing on the Claimant's claim for disability. R. 555-81.   The Claimant, an impartial medical expert--Joseph Rubini, M.D. ("Dr. Rubini"),[2] and vocational expert ("VE") Robert Bradley testified at the hearing. *Id.*   Dr. Rubini's testimony was based solely on the Claimant's medical record. He did not examine the Claimant. *Id.*   He offered the following testimony:

- Claimant does not meet any of the listings (R. 558);

- The massive colon operation she had when she was 16 years old brought her condition under control "to a marked degree" (R. 558); and

- With use of proper medication, her flares and thrombosis were mostly under control (R. 558-60).

After questioning Dr. Rubini, the ALJ stated that Dr. Rubini did not find much as to the Claimant's limitations. R. 560.  Dr. Rubini was also questioned by Plaintiff's counsel. R. 561-65. After reviewing the Claimant's medication regimen, Dr. Rubini stated that the Claimant was more symptomatic than what the record led him to believe. R. 564.[3]

The Claimant testified that she does not have insurance, so it is difficult to get medical

---

[2] Dr. Rubini is Board Certified in internal medicine and is a hematologist. R. 557, 560.
[3] Dr. Rubini was not asked any questions about whether or how his current view of the Claimant's symptoms may impact his opinions. *Id.* at 564-65.

treatment. R. 571. On a good day, the Claimant testified that she goes to the bathroom maybe eight (8) times, and on a bad day, as many as twenty (20) times. R. 571-72. She stated that the colitis has remained unchanged since her surgery and she now has bowel obstructions. R. 572. She testified that the medications help sometimes. R. 572. The Claimant also testified regarding her clotting disorder and stated that she is allergic to most blood thinners. R. 573. When asked by the ALJ what prevents her from working, the Claimant stated:

> I think mostly the bathroom situation and times in the past like if I'm working the bathroom will be somewhere which is like right in front of everyone and it's really embarrassing and I'm in the bathroom a lot. So that's probably the biggest thing and doctor's appointments.

R. 577. The VE testified after the Claimant. R. 579-81. When asked how an employer would deal with the Claimant's "multiple bathroom breaks", the VE stated:

> Well to the point where they'd see that, you know, they interrupt the work-flow, the, the individual's ability to perform the job or -- and/or there was disruption in the work place with, especially, with fellow employees; one's job would be in serious jeopardy.

R. 579.

On November 8, 2008, the ALJ issued a decision finding that Claimant is not disabled. R. 12-19. The ALJ made the following significant findings:

1. The Claimant has the following severe impairments: ulcerative colitis, status post colonectomy; recurrent deep vein thrombosis related to a genetic clotting disorder; and history of ovarian cysts. R. 14.

2. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. R. 15.

3. The Claimant has the RFC to perform the full range of light work. R. 16.

-10-

4. The Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but Claimant's statements concerning the extent of her symptoms are not credible to the extent they are inconsistent with his RFC assessment. R. 17.

5. Based on a RFC for a full range of light work, a finding of "not disabled" is directed by Medical-Vocational Rule 202.20. R. 19.

In determining the Claimant's RFC, the ALJ stated the following with respect to Dr. Masri's medical opinions:

> [Dr. Masri] has opined on October 19, 2006, that the [C]laimant's non-compliance is due to financial reasons, requires further treatment, and that she is practically disabled due from her impairments. Dr. Masari, [sic] does not elaborate on how she is disabled by her impairments, to support his opinion. The undersigned note [sic] that the issue of disability is one reserved to the Commissioner and cannot be given any special weight. However, the undersigned also recognizes the existence of reasons for the [C]laimant's non-compliance.

R. 17. Little weight was given the opinion of Dr. Masri that the Claimant is disabled "because it is unsupported, and is on an issue reserved to the Commissioner." R. 18. The ALJ gave great weight to Dr. Rubini's opinion and testimony who "stated that the [C]laimant's impairments caused her no significant limitations, if compliance is maintained." R. 18. Substantial weight was given the state agency opinions that the Claimant "is capable of light exertional activities." *Id.* The ALJ stated:

> In sum, the above [RFC] assessment is supported by [the] opinion of the medical expert who testified at the hearing Dr. Rubini, that the [C]laimant <u>would not have any significant limitations</u> in her ability to work if she remained compliant with her treatment. While the [C]laimant has had several hospitalizations due to exacerbation of symptoms, this would not occur in the future if the [C]laimant remained compliant according to the testimony of Dr. Rubini. Similarly, the state

disability experts have opined that the [C]laimant is capable of a broad
range of light work.

R. 18 (emphasis in original). The ALJ did not address the consulting opinion of Dr. Navarro.

Upon request by the Claimant, the Appeals Council denied review of the ALJ's decision.

R. 4-6.  On May 20, 2009, Claimant filed an appeal before this Court.  Doc. No. 1.

## III.   THE PARTIES' POSITIONS

The Claimant assigns two errors to the Commissioner:  1) the ALJ failed to consider and
evaluate all of the material evidence of record, particularly the treating physician opinion of Dr.
Navarro; and 2) the VE's testimony does not constitute substantial evidence because the ALJ
posed incomplete and inaccurate hypothetical questions to the VE. Doc. No. 18.   Thus, the
Claimant argues that the Commissioner's decision should be reversed and remanded for further
proceedings. *Id.*

The Commissioner argues that substantial evidence supports his decision that the
Claimant is not disabled.  Doc. No. 19.  The Commissioner maintains that the ALJ:  1) properly
considered and evaluated the medical evidence; and 2) properly found that Claimant can perform
other work that exists in significant numbers in the national economy. *Id.*   Thus, the
Commissioner maintains that the decision should be affirmed. *Id.*

## IV.   LEGAL STANDARDS

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has
established a five-step sequential evaluation process for determining whether an individual is
disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).   The steps are followed in order.   If it is

determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 CFR § 404.1521. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must

consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987). However, a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments

meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant

work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 CFR § 404.1567.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

**B.    THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the district court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand

appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[4]

## V.     <u>ANALYSIS</u>

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. The opinions or findings of a non-examining physician are entitled to

---

[4] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ stating the specific weight given to different medical opinions and the reasons therefore, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[5] Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005). "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269. Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

In determining the Claimant's RFC, the ALJ gave little weight to the opinion of Dr.

---

[5] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

Masri that the Claimant is disabled "because it is unsupported, and is on an issue reserved to the Commissioner." R. 18.[6]  The ALJ gave great weight to Dr. Rubini's opinion and testimony who "stated that the [C]laimant's impairments caused her no significant limitations, if compliance is maintained." R. 18.  Substantial weight was given the state agency opinions that the Claimant "is capable of light exertional activities." *Id.*  The ALJ stated:

> In sum, the above [RFC] assessment is supported by [the] opinion of the medical expert who testified at the hearing Dr. Rubini, that the [C]laimant <u>would not have any significant limitations</u> in her ability to work if she remained compliant with her treatment. While the [C]laimant has had several hospitalizations due to exacerbation of symptoms, this would not occur in the future if the [C]laimant remained compliant according to the testimony of Dr. Rubini.  Similarly, the state disability experts have opined that the [C]laimant is capable of a broad range of light work.

R. 18 (emphasis in original).

Claimant states that the ALJ never mentioned Dr. Navarro's opinion in his decision. Doc. No. 18 at 9.  As set forth above, Dr. Navarro stated:

> This patient has had all the psychological issues related to severe ulcerative colitis at a young age with depression, anxiety, multiple hospital admissions.  Also, because pouchitis can cause a lot of diarrhea and urge to go to the bathroom and flare-ups, she cannot maintain a job.  Usually that is because of the nature of this disease, they have to go to the bathroom numerous times a day which most jobs are not sensitive to.  They also need frequent days off when they have flare-ups and it is very difficult for these patients to maintain a job.  Also, when she reached age 18, she lost her Medicaid insurance and now she is not insured and some of these drugs for maintenance at the local level for pouchitis are also costly and apparently she has no access to medical care due to the fact

---

[6] the ALJ noted:
> [Dr. Masri] has opined on October 19, 2006, that the [C]laimant's non-compliance is due to financial reasons, requires further treatment, and that she is practically disabled due from her impairments.  Dr. Masari, [sic] does not elaborate on how she is disabled by her impairments, to support his opinion.  The undersigned note [sic] that the issue of disability is one reserved to the Commissioner and cannot be given any special weight.  However, the undersigned also recognizes the existence of reasons for the [C]laimant's non-compliance.

R. 17.

that she does not have insurance and she only has access when there is an acute emergency, and she has to be admitted to the hospital, and even when she is admitted to the hospital she is not welcome to most of these hospitals for care without insurance.

. . .

This patient will need some sort of disability in order to have access to medical care. She does not have money, she cannot keep a job, her parents do not have the money either to pay for expensive hospital bills and this patient has disease of the magnitude that will require disability at the present time. Once we get her ulcerative colitis under control, then she may be able to maintain a job, but right now she will need disability. Also we have the other issue of the hypercoagulable state that is being worked up with multiple clot formation.

R. 255-56. Dr. Navarro gave a thorough review of the Claimant's condition and symptoms. Citing *Sharfarz*, 825 F.2d at 279, the Claimant argues that the ALJ's failure to mention Dr. Navarro's opinion, much less state the weight accorded thereto, is reversible error. Doc. No. 18 at 9.

The Commissioner argues that because Dr. Navarro only saw the Claimant on two occasions, he was not a treating physician under the regulations and, therefore, the ALJ was not obligated to articulate what weight he accorded Dr. Navarro's opinion. Doc. No. 19 at 4-5. In support, the Commissioner relies on *MacGregor*, 786 F.2d at 1053, which, as previously mentioned, states: "The Secretary must specify what weight is given to a *treating* physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *Id.* (emphasis added). The Commissioner does not address the more recent case relied on by Claimant, *Sharfarz*, 825 F.2d at 279. Doc. No. 19 at 6. In *Sharfarz*, the Court stated: "In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the *different medical* opinions and the reasons therefor. *Sharfarz*, 825 F.2d at 279 (emphasis added). Under *Sharfarz*, the ALJ must state with particularity the weight given

different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz*, 825 F.2d at 279.  Without the ALJ even mentioning the opinion of Dr. Navarro, it is impossible for this court to determine whether his decision is supported by substantial evidence. *Hudson*, 755 F.2d at 786.  Therefore, this case should be remanded to the ALJ for rehearing and further inquiry and analysis of the various physician opinions. The Claimant should undergo an additional consultative examination should the ALJ find it helpful or necessary.[7]

**VI.**    **CONCLUSION**

For the reasons stated above, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for rehearing**.  The Clerk should be directed to enter Judgment in favor of the Claimant and close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 21, 2010.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

---

[7] Because this issue requires reversal, it is not necessary to consider the remaining arguments.

James Wilson Keeter
Morgan & Morgan, P.A.
20 N. Orange Ave.
P.O. Box 4979
Orlando, Florida        32802-4979

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, #400
8880 Freedom Crossing
Jacksonville, Florida   32256-1224